## Case No. 12,065.

### In re ROSEY.

### [6 Ben. 137.] [1]

District Court, E. D. New York. June Term, 1872.

BANKRUPTCY — SECOND MEETING OF CREDITORS — DISCRETION OF REGISTER.

If the assignee, after three months from the adjudication in bankruptcy, requests the court to call a second general meeting of creditors, it must be called, and the register has no discretion to refuse to call it.

[In the matter of Louis H. Rosey, a bankrupt.]

The register in this case certified to the court, that the assignee had applied to him in writing to call a second general meeting of creditors, under the provisions of the 27th section of the bankruptcy act [of 1867 (14 Stat. 529)], which request was accompanied by the

report and account of the assignee, in compliance with an order of the register; and that he had, for reasons which he deemed sufficient, and which he certified to the court, refused to call the meeting.

[See Case No. 12,066.]

---

## Case No. 12,066.

### In re ROSEY.

### [6 Ben. 507; [1] 8 N. B. R. 509.]

District Court, S. D. New York. May Term, 1873.

INTERNAL REVENUE—PENALTY—PRIORITY OF DEBT TO UNITED STATES.

1. Where a statute of the United States gives a penalty, and no particular remedy is prescribed for enforcing it, an action of debt may be brought to recover it, and the debt arises when the penalty is incurred.

[Cited in Ransdell v. Patterson, 1 App. D. C. 491.]

2. R. filed a voluntary petition in bankruptcy on August 14th, 1871, and was on that day adjudged a bankrupt. On October 3d, 1871, the United States brought a suit against him to recover penalties for alleged violations by him of the internal revenue laws, in selling, in April, 1871, cigar lights in packages without tax stamps, contrary to the 165th and 169th sections of the act of June 30th, 1864 (13 Stat. 296, 302), as amended by the 8th section of the act of July 13th, 1866 (14 Stat. 144). The bankrupt appeared in the suit, but put in no defence, and on February 2d, 1872, the United States recovered a judgment against him for $5,081 68. Afterwards a proof of debt was filed on behalf of the United States, in the bankruptcy proceedings, founded on the judgment, and the United States claimed to be paid in full, by priority, under the 28th section of the bankruptcy act. The assignee applied to the register for a re-examination of the claim, and testimony was taken, and the register certified to the court the question whether the claim was a valid and provable claim, and whether it was entitled to a priority of payment: *Held*, that the bankrupt had incurred the penalties in April, 1871, when the cigar lights were sold without the stamps.

[Cited in Boynton v. Ball, 121 U. S. 466, 7 Sup. Ct. 983.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

3. That the claim was a provable debt, for so much of the judgment as did not consist of costs of the suit, and that for that amount the United States was entitled to a priority of payment.

[Cited in Re Lachemeyer, Case No. 7,966.]

By I. T. WILLIAMS, Register:

[I, the undersigned register in charge of the above entitled matter, do hereby certify and report: That at the final meeting of creditors it appeared that the sum of eight hundred and forty-three dollars and twelve cents was in the hands of the assignee for distribution among the creditors of the said estate. That counsel for the United States thereupon called attention to proof of a claim on the part of the government against the said estate, for the sum of five thousand and eighty-one dollars and sixty-eight cents, and claimed that the same was a preferred claim under the provisions of section twenty-eight of the bankruptcy act [of 1867 (14 Stat. 530)]. Counsel for the assignee objected to such preference, and insisted that said claim was not a good or valid claim against said estate, and that in no view was it a preferred claim. That it duly appeared, by the admissions and proofs of the parties aforesaid, that the said claim arose as follows, to wit: A suit was commenced in the United States circuit court for the Southern district of New York, by the district attorney, in favor of the government, against the said Louis H. Rosey, on the 3d day of October, 1871, charging the said Rosey with several violations of the provisions of sections one hundred and sixty-five and one hundred and sixty-nine of the act of congress approved June, 30th, 1864 (13 Stat. 296). That an appearance was entered for said Rosey, but no plea was filed, and judgment passed against him in said court on the 2d day of February, 1872, by default, for the said sum of five thousand and eighty-one dollars and sixty-eight cents. The bankrupt filed his petiton in the district court on the 14th day of August, 1871, and was on the same day adjudged a bankrupt. The assignee was chosen on the 18th day of September, 1871, and the choice was approved on the 23d day of the same month. An assignment of the property of the bankrupt was executed by the register in charge on the said 23d day of September, and the said assignee thereupon became, and has ever since remained, assignee of the estate of said bankrupt, but was never made a party to said suit, nor did he ever receive any notice of the existence of said suit until the filing of the claim aforesaid, on the 24th day of June, 1872. And it being suggested that, under some decision recently made, the court might be of opinion that the record of said judgment would not be proper evidence of said claim, and the assignee's counsel not objecting thereto, I took the testimony of divers witnesses tending to show the violation of the act aforesaid, on the part of said bankrupt, and that penalties had been incurred by him thereunder, which in the aggregate, would amount to the sum for which said judgment was rendered, which testimony is herewith submitted. Upon the foregoing facts it was maintained, on the part of the government, that the said claim was a good and valid claim against the estate of the said bankrupt, and that the same was entitled to be paid out of the assets of said bankrupt in preference to the claim of any other creditor of said estate. To this the counsel for the assignee took issue, and the parties thereupon desired the same to be certified to the district judge for decision.] [2]

[See Case No. 12,065.]

Roger M. Sherman, Asst. Dist. Atty., for the United States.

James K. Hill, for assignee.

BLATCHFORD, District Judge. The petition in this case, a voluntary one, was filed on the 14th of August, 1871. The adjudication was made on the same day. The assignee was chosen on the 18th of September, 1871, and an assignment was executed to him on the 23d of September, 1871. On the 4th of October, 1871, the United States brought a suit against the bankrupt, in the circuit court for this district, to recover from him sundry penalties for violations of the provisions of sections 165 and 169 of the internal revenue act of June 30, 1864 (13 Stat. 296, 297, 302), as amended by the 8th section of the act of July 13, 1866 (14 Stat. 144, 145). The assignee was not a party to such suit. The bankrupt appeared in it, but filed no plea, and a judgment by default was entered against him, on the 2d of February, 1872, for $5,081 68. After the recovery of such judgment, the United States filed in this matter a proof of debt against the estate of the bankrupt, founded on and for the amount of said judgment. On presenting this proof of debt, the United States claimed not only that the amount of it was a provable debt, but that it was entitled to a preference or priority in dividend, under the 28th section of the act, after the payment of the fees, costs and expenses mentioned in that section. The assignee controverted both of these propositions. Thereupon, the assignee, under the 34th general order, applied to the register for a re-examination of the claim, and testimony was taken thereon. The testimony is addressed to the question, whether the bankrupt incurred the penalties in question in April, 1871, to an amount equal to the amount of such judgment. The register has certified to the court, for determination, the issue as to whether the claim of the United States is a valid and provable claim, and, if it is, whether it is entitled to preference or priority.

The question involved turns on the point,

_____

[2] [From 8 N. B. R. 509.]

whether the claim was a debt provable against the bankrupt at the time of the adjudication.

The 165th section of the act referred to provides, that, if any person shall make, prepare and sell, or remove for consumption or sale, lucifer or friction matches, cigar lights, or wax tapers, upon which a duty or tax is imposed by law, as enumerated and mentioned in Schedule C, of the act, without affixing thereto an adhesive stamp or label denoting the tax, he shall "incur a penalty of fifty dollars for every omission to affix such stamp." Section 169 provides, that any person who shall offer or expose for sale any of the articles named in Schedule C, or in any amendments thereto, shall be deemed the manufacturer thereof, and subject to all the duties, liabilities and penalties imposed by law, in regard to the sale of domestic articles without the use of the proper stamp or stamps denoting the tax paid thereon. Schedule C imposes a duty or tax of one cent, for each parcel or package, on friction matches or lucifer matches, or other articles made in part of wood, and used for like purposes, in parcels or packages containing one hundred matches or less. It also, as amended, imposes on wax tapers a tax of double the rates imposed on friction or lucifer matches; and on cigar lights, made in part of wood, wax, glass, paper, or other materials, in parcels or packages containing twenty-five lights or less in each parcel or package, one cent, and when in parcels or packages containing more than twenty-five and not more than fifty lights, two cents, and for every additional twenty-five lights, or fractional part of that number, one cent additional. The testimony shows that the bankrupt, in April, 1871, in the city of New York, sold 125 grosses of packages or boxes of matches, which were wax tapers or cigar lights, and had not upon them any tax stamps. Each box contained about 25 matches. There were 18,000 boxes. The penalty of $50 for each box unstamped would make an aggregate of $900,000 of penalty.

It is a well settled principle, that, in all cases where a forfeiture of property to the United States, as a penalty for a violation of law, is made absolute by statute, without giving any alternative remedy, such as a forfeiture of property or its value, and without prescribing any substitute for the forfeiture, or allowing any exception to its enforcement, or employing any language showing a different intent, the forfeiture becomes absolute at the commission of the prohibited act, and the title to the property vests from that moment in the United States, and a subsequent decree condemning the property as forfeited, relates back to the time of the commission of the prohibited act, and

takes date from such time, and not from the date of the decree. Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246, 311; Caldwell v. U. S.; 8 How. [49 U. S.] 366, 381; Henderson's Spirits, 14 Wall. [81 U. S.] 44, 56, 57.

The 179th section of the act of 1864, as amended by the 8th section of the act of 1866 (14 Stat. 145), provides, that the penalties incurred under the act may be sued for and recovered in the name of the United States, in any proper form of action, or by any appropriate form of proceeding, before any circuit or district court of the United States, for the district within which said penalty may have been incurred, or before any court of competent jurisdiction. It is well settled, that, where a statute gives a penalty, and no particular remedy is prescribed for enforcing it, an action of debt may be brought to recover it. U. S. v. Colt [Case No. 14,839]; U. S. v. Lyman [Id. 15,-647]; U. S. v. Bougher [Id. 14,627]; Stockwell v. U. S., 14 Wall. [81 U. S.] 531, 541, 542. When the penalty is incurred, by the commission of the act prohibited by the statute, the penalty accrues to the government thereby, and a debt to the government arises. In the present case, the amount of the debt was fixed and made certain by the statute. Where a statute creates a charge or duty on an importer of goods to pay the duties upon them immediately on the importation, a debt is created to the government, for which an action of debt lies. U. S. v. Lyman [supra]; Meredith v. U. S., 13 Pet. [38 U. S.] 486, 493. So, in the present case, the sale of the matches without stamps created a charge or duty on the bankrupt immediately to pay the penalty, and it became a debt, within the sense of the bankruptcy act.

Under the 5th section of the act of March 3d, 1797 (1 Stat. 515), which provides, that, when any person becoming indebted to the United States becomes insolvent, the debt due to the United States shall be first satisfied, it has been held that such priority of the United States attaches to all debts, equitable as well as legal (Howe v. Sheppard [Case No. 6,772]); and to debts created and owing, although payable only in futuro (U. S. v. State Bank of North Carolina, 6 Pet. [31 U. S.] 29, 36, 37).

I am of opinion that the United States is entitled to prove a debt in respect to so much of the amount of its claim set forth in its proof of debt as does not consist of any costs of the suit, and to a priority or preference therefor. I adhere to the view taken by me in Re Brown [Case No. 1,975], that the claim is provable as a debt existing at the time of the adjudication, although a judgment on it was recovered after the adjudication.